[No. 12604.   In Bank. — November 26, 1890.]

## RALPH E. CORSON, APPELLANT, v. G. BERSON, RESPONDENT, AND ROBERT EWING ET AL., APPELLANTS.

LANDLORD AND TENANT — RENT — AGREEMENT FOR REDUCTION — RECOVERY BACK OF FRAUDULENT OVERCHARGE — TENANCY FROM MONTH TO MONTH. — Where a landlord agreed with tenants of a store, occupying from month to month, that if they would remain as such tenants, and an adjoining vacant store should be rented for less monthly rent than they were paying, they should have their store at the same reduced rental, they may recover back the amount of overcharge for each month of their occupancy, if the adjoining store was in fact rented for one hundred dollars per month less than they were paying, but a lease thereof was given for the same amount of rent, with a separate written agreement for a rebate of one hundred dollars per month, for the purpose of deceiving them and inducing them to pay the same rent as formerly.

ID. — EVIDENCE — WRITTEN AGREEMENT FOR REBATE OF RENT — PROOF OF FRAUDULENT OVERCHARGE. — To substantiate the claim of fraudulent overcharge of rent under such agreement, it is competent for the tenants to introduce in evidence the written agreement for a monthly rebate of rent to the tenants of the adjoining store.

ID. — CONTINUANCE OF REDUCED RENT — PRESUMPTION. — Tenants from month to month are presumed to continue their rental for each new month upon the same terms as for the previous month; and after the right to the reduction of rental has accrued under an agreement therefor, such reduced rate must be presumed to continue for each succeeding month of their occupancy, though the agreement for reduction of the monthly rental was for no stated period.

LXXXVI. CAL.—28

ID. — PAROL EVIDENCE — AGREEMENT AFTER EXPIRATION OF LEASE. — When the term of a lease has expired, without renewal of the term, and the tenants are holding from month to month at the same monthly rental, it is competent for the parties to the lease to make a parol agreement for the reduction of rent, or as to the continuance of the tenancy for any period not exceeding one year; and any oral evidence as to what occurred between the parties in relation to such agreement is admissible, and is not subject to the objection that it tends to vary the terms of the written lease.

ID. — DECLARATION OF AGENT — PROOF OF FRAUD — PARTNERSHIP — POWER OF ONE PARTNER. — The declaration of an agent of the lessors, who negotiated the lease of the adjoining store, regarding his reasons for concealing the true amount of rental and drawing the lease for a higher rate, is admissible against each of the lessors, as tending to prove fraud on their part, though they were a partnership, and he was employed by only one member of the firm to negotiate the lease for the benefit of the firm, and directed by such member to conceal the amount of rental from the tenants whose rights were fraudulently affected.

ID. — PRESENTATION OF CLAIM FOR RENT OVERCHARGED — ESTATE OF DECEASED LESSOR — PARTNERSHIP — PARTIES — JUDGMENT. — A claim for overcharged rent against joint lessors who are partners need not be presented as a claim against the estate of a deceased partner, in order to enforce it against the firm; nor need the executors of the deceased partner be joined as parties to an action to enforce such claim against the firm, and if joined, a judgment against the firm is not erroneous because not requiring that the amount awarded be paid in due course of administration of the deceased partner's estate.

APPEAL from a judgment of the Superior Court of the city and county of San Francisco, and from an order denying a new trial.

The facts are stated in the opinion.

*Lloyd & Wood*, and *E. F. Preston*, for Appellants.

*Royce & Cummins*, and *C. E. K. Royce*, for Respondent.

GIBSON, C. — This action was brought by plaintiff, Corson, as assignee, to recover from the firm of A. Berson & Son the sum of $1,050, due for rent, for three and one half months, on a lease made and delivered to them by the firm of Ewing, Plum & O'Brien, plaintiff's assignors. A. Berson & Son admitted, by their answer, that they occupied the leased premises during the period

above mentioned, but denied that such occupation was under or pursuant to the lease relied upon by plaintiff, and averred that during that time they held under a verbal agreement with Ewing, Plum & O'Brien, by which they, A. Berson & Son, were to hold and pay rent for the premises, and did hold and pay for the same, at the rate of $150 per month. With their answer, they filed a cross-complaint, bringing in, as parties to the action, Ewing and Plum, and Flood and Coleman, the executors of O'Brien, the deceased partner of Ewing and Plum.

By this cross-complaint, they alleged that on or about March 1, 1884, Ewing, Plum & O'Brien let the premises to A. Berson & Son, from month to month, upon the same rental that the lessors might get for an adjoining store which they, from and after said date, and up to June 1, 1885, rented for the sum of $150 per month, but fraudulently concealed the true amount of the rent thereof from A. Berson & Son, and fraudulently represented to them that the true rental of the adjoining store was $300 per month, and thereby fraudulently induced A. Berson & Son to pay a greater amount of rent than they had agreed to pay, by reason of which, Ewing, Plum & O'Brien became indebted to A. Berson & Son in the sum of $150 per month for every month's rent paid by the latter from March 1, 1884, to February 15, 1885, with interest thereon from the last day of each month, less three and one half months' rent from the latter date, at $150 per month. After the commencement of the action, A. Berson died, and it was continued in the name of G. Berson, as the surviving partner of the firm of A. Berson & Son.

The case was tried without a jury, and the court found the facts in favor of G. Berson, as the said surviving partner, in accordance with the allegations of the cross-complaint, except that the rental of the adjoining store was found to be $200 per month for one year from June 1, 1884, instead of $150 per month from

March 1, 1884; and that the rent due from A. Berson &
Son for three and one half months from February 15,
1885, was at the rate of $200, instead of $150, per month.
Judgment followed for the cross-complainant, G. Berson,
as surviving partner of A. Berson & Son, for $178.50,
overplus paid by the firm from June 1, 1884, to February
15, 1885, after deducting $700 for rent due from the lat-
ter date until June 1, 1885, together with interest on the
overplus from the date last mentioned.   From this
judgment, and an order denying a new trial, the plaintiff,
Corson, and Ewing and Plum, and O'Brien's executors,
viz., Flood and Coleman, appeal.

In order that the points made by appellants may be
fully understood, it is necessary to state the leading
facts as shown by the evidence.   A. Berson & Son, by
a lease in writing, leased a store from Ewing, Plum &
O'Brien for two years from May 15, 1881, at the monthly
rental of three hundred dollars per month, payable in
advance each month, with the privilege of an extension
of the term at the same rental up to the date of the ex-
piration of the lease of Ewing, Plum & O'Brien, from
J. G. Brooks.   The lease also provided that if the les-
sees should hold over after the expiration of the term of
two years with the expressed or implied consent of their
lessors, such holding should be construed as a tenancy
from month to month.   On the expiration of the term, on
May 15, 1885, the lease was not extended, but the lessees
continued to hold the premises as tenants from month
to month at the same rate specified in the lease.   While
they were thus holding, the adjoining store, which also
belonged to the lessors, became vacant in February,
1884, and Ewing, for his firm, in answer to the repeated
solicitations of A. Berson, of the firm of A. Berson
& Son, agreed with the latter, as an inducement for
them to remain as tenants, that if the vacant store
should be rented for less than three hundred dollars
per month, A. Berson & Son should have their store

·at the same rental. In May of the same year, the lessors leased the adjoining store for one year from June 1, 1884, at a monthly rental, expressed in the lease, of three hundred dollars per month, and gave the lessee a separate paper, in which the lessors stipulated to allow the lessee one hundred dollars per month on the rent of three hundred dollars per month during the term. This stipulation was concealed from A. Berson & Son, to whom it was represented by their lessors that the tenants of the adjoining store were paying three hundred dollars per month therefor. Believing this representation to be true, A. Berson & Son continued to pay three hundred dollars per month until February 15, 1885, about which time they discovered that the tenants of the adjoining store were and had been paying only two hundred dollars per month, instead of three hundred dollars, but continued to hold the premises until June 1, 1885.

Appellants' first point is, that the court erred in overruling their objection to the following question put to G. Berson by his counsel: "What took place when the lease expired?—I mean the original two years, or the first term, of the lease,"—on the ground that it called for testimony that would tend to vary the terms of the written lease. It is obvious that, as the question related to matters that occurred after the lease had expired, the question was not designed to, and in fact did not, elicit anything that tended to vary its terms, and the objection thereto was properly overruled. Appellants' exception to the court's refusal to strike out the testimony of the same witness as to what was said relative to the reduction of rent, upon the same ground upon which the said objection was placed, cannot be sustained, because, when the verbal agreement was made with them regarding the reduction of rent upon the contingency, which happened, viz., of not obtaining three hundred dollars per month for the adjoining store, they were holding as ten-

ants from month to month, as provided for in the original lease, which had expired; and it was competent for them to make any parol agreement as to the continuation of their tenancy for any period not exceeding one year. Besides, the testimony was relevant, and tended strongly to support the agreement for the reduction of rent, which constituted the gist of the cross-action.

Appellants' third objection is, that the court erred in receiving in evidence the paper that had been given to the tenants who leased the adjoining store at the time they obtained a lease of it from Ewing, Plum & O'Brien, by which paper it was provided that such tenants should receive a rebate of one hundred dollars on each month's rent, on the ground that the paper was signed by Ewing alone, and could not bind his firm. The fact that the paper was given with the written lease to the tenants of the adjoining store, and formed a part of it, is sufficient to show that it was properly received in evidence; and the cases cited by us in support of our disposition of the next point of the appellants conclusively establishes that the trial court was right in its ruling in this respect.

After witness Connolly, who was a member of the firm that had leased the adjoining store, had testified: "I paid two hundred dollars per month, and no more. I had a conversation with Mr. Ewing and with Mr. Coffey, the young man with Easton & Eldridge, at the time. He was the party with whom I negotiated the lease from Mr. Ewing," — he was asked this question: "Well, now, what was the reason that the lease was drawn for three hundred dollars given you then?" And it was objected to by the appellants, other than Corson, on the ground that anything said by Coffey not in the presence of Ewing, or any of the other parties to the lease, as lessors, could not bind them. The objection was properly overruled, because, by the above testimony of the same witness, it sufficiently appeared that Coffey was acting as agent for the lessors in negotiating

the lease; and anything he said while acting in that
capacity, regarding the concealment of the true amount
of rent from A. Berson & Son, under the direction of
any member of the firm, was, we think, clearly admis-
sible; for no matter how slight the tendency of the evi-
dence may be to prove fraud, it is not for that reason
incompetent. (*Hubbard* v. *Briggs,* 31 N. Y. 518.) If
the trial court had any doubt at the time the question
was asked as to whether Coffey acted as agent for the
lessors in negotiating the lease, it must have been re-
moved by Coffey's own testimony, given subsequently,
in which he said: "I am the party mentioned in the
testimony who negotiated the lease from Messrs. Con-
nolly & Borle for Mr. Ewing." He designated but one
member of the firm, but as such partner was acting for
the firm in the transaction of its business in effecting
the lease referred to, any misrepresentations or conceal-
ments made or directed to be made by him in connec-
tion therewith were competent against the firm. (*Mam-
lock* v. *White,* 20 Cal. 598; *Chester* v. *Dickerson,* 54 N. Y.
1; *Wolf* v. *Mills,* 56 Ill. 360.)

Appellants further contend that if they promised to
reduce the rent at all, it was not for any stated period,
but, at most, from month to month, and in allowing A.
Berson & Son to recover the overplus of rent paid for
one year, the court committed error. The agreement
for the reduction of rent was, it is true, for no definite
period, but upon the letting of the adjoining store for
but two hundred dollars per month, A. Berson & Son
became, under the agreement, entitled to have their rent
reduced to that sum. And as they were at the time
holding as tenants from month to month, the lessors,
under section 1946 of the Civil Code, could, by proper
notice, have terminated their tenancy, or, by giving the
notice provided for in section 827 of the Civil Code, have
increased their rent; but thinking that in all probabil-
ity A. Berson & Son would not discover their secret

arrangement with the tenants of the adjoining store, and desiring to retain A. Berson & Son as profitable tenants, they did not deem it necessary to act under either of those provisions of the Civil Code. Section 1945 also provides: "If a lessee of real property remains in possession thereof after the expiration of the hiring, and the lessor accepts rent from him, the parties are presumed to have renewed the hiring on the same terms and for the same time, not exceeding one month when the rent is payable monthly, nor in any case, one year."

Now, as A. Berson & Son, at the time the contingency happened upon which they became entitled to a reduction of one hundred dollars per month in their rent, were tenants from month to month, every month that their lessors accepted rent from them the hiring was presumably on the same terms for each month; that is to say, for the same rent per month as that paid by the tenants of the adjoining store. This being so, the court correctly allowed the amount they had overpaid by reason of the concealment from them of the true rent of the adjoining store, less the three and one half months' rent that had accrued from the time they stopped paying rent upon discovering that they had been paying one hundred dollars per month too much, which they were induced to pay by the deceit their lessors practiced upon them.

Another objection of appellants is, that A. Berson & Son did not present their claim for rent overpaid to the executors of the will of O'Brien, as required by section 1493 of the Code of Civil Procedure. That section provides that all claims arising upon contracts against the estate of a deceased person, whether due or not, must be presented within the time limited in the notice requiring such presentation, or be forever barred, unless the claimant shall show that he was out of the state, and in fact had no notice, in which case his claim may be presented at any time prior to the final distribution of the

estate. The claim of A. Berson & Son was not a claim against the estate of O'Brien, but against the firm of which he had been a member, and consequently did not come within the purview of that section.

For the same reason, the last point urged by appellants, to the effect that two of the appellants are sued in the cross-complaint as executors, yet the judgment against them does not require that the amount awarded thereby shall be paid in the due course of the administration of their testator's estate, must also fail. As there was no claim made against the estate of the deceased partner, the executors of his will were not necessary parties to the cross-action; and the same end could have been attained by proceeding against the two surviving partners alone. (*Friermuth* v. *Friermuth*, 46 Cal. 42.)

We therefore advise that the judgment and order appealed from be affirmed.

Belcher, C. C., and Vanclief, C., concurred.

The Court.—For the reasons given in the foregoing opinion, the judgment and order appealed from are affirmed.