[Civ. No. 12805. First Dist., Div. Two. Aug. 20, 1945.]

MARIE LePLEUX PY, Appellant, v. HENRY AUGUST PLEITNER et al., Respondents.

Marie LePleux Py, in pro. per., for Appellant.

Cyril Roche for Respondents.

NOURSE, P. J.—Plaintiff sued in propria persona to set aside a sale of real property made under a deed of trust, and for damages sustained as a result of such sale. Defendant Gibson who was the purchaser at the trustee's sale, was adjudged absolute owner of the property, and plaintiff was denied all relief prayed.

The controversy arises out of a promissory note dated November 5, 1941, executed by plaintiff as evidence of a loan to her of $4,200, secured by a deed of trust covering real property. The note called for payment of monthly instalments of $42 including interest at 6 per cent and plaintiff agreed to pay taxes, insurance and, in event of default, attorney's fees and trustee's expenses of sale. Plaintiff paid instalments until June 6, 1942, when she defaulted on payments of insurance, taxes and subsequent payments on the note. Notice of default and of intention to sell under the deed of trust was recorded October 17, 1942, and a copy was mailed to plaintiff. Notice of time and place of sale was duly published and a copy was posted on the premises. Several continuances of the sale were granted upon request of an attorney then representing plaintiff and a sale was made on the courthouse steps on July 28, 1943, to an agent of defendant Gibson. At that time $800 was paid in cash, and Gibson's note and deed of trust was accepted for the balance of the $5,000 bid. After the principal, interest, costs of sale, and attorney's fees were deducted, plaintiff was paid the sum of $113.23 which she retained while the litigation was pending. The trial court found that the sale was fairly conducted in accordance with law and the deed of trust.

Appellant devotes a large part of her brief to the argument that the statutory proceedings governing the foreclosure of mortgages was not followed, and that she was denied the

right of redemption. The obligation in suit was secured by an ordinary deed of trust with the right of sale on default. As such it was not subject to the rules relating to mortgage foreclosures. And when, by the terms of the deed, the trustees are granted the power to sell without judicial proceedings, a sale made in accordance with the deed does not carry the right of redemption. The distinction between the two kinds of security is recognized in *Bank of Italy etc. Assn.* v. *Bentley,* 217 Cal. 644, 655 [20 P.2d 940], where the Supreme Court said: "Thus it has been held that a deed of trust differs from a mortgage in that title passes to the trustee in case of a deed of trust, while, in the case of a mortgage, the mortgagor retains title; that the statute of limitations never runs against the power of sale in a deed of trust, while it does run against a mortgage; and that a mortgagor has a statutory right of redemption after foreclosure (Code Civ. Proc., sec. 702), while no such right exists under a deed of trust. (See, generally, Kidd, Trust Deeds and Mortgages in California, 3 Cal.L.Rev. 381; see, also, 12 Cal.L.Rev. 307; 20 Cal.L.Rev. 31; 5 So.Cal.L.Rev. 227.)"

But a sale conducted under these conditions is open to attack in a court of equity and the court will view the proceedings with extreme care to see that the rights of the trustor are fully protected. Here the first attack made upon the sale is that the full purchase price was not paid in cash. The property was bid in at $5,000. Eight hundred dollars was paid in cash and a note and mortgage taken for the balance. The original trustee accepted full settlement of the obligation, appellant's indebtedness was satisfied, and after interest, attorney's fees, and expenses of the sale were deducted, appellant was paid the balance which she retained. She has therefore suffered no injury from the failure of the purchaser to pay the full purchase price in cash.

Next she argues that the bidding was collusive since the value of the property was far above $5,000, and she states in her brief that the property consists of a seven and one-half and two and one-half acre tract, divided by a roadway, that it is situated on a main arterial highway, that on the seven and one-half acre tract are a seven-room house, a four-room cottage, an apricot orchard of 120 trees, two wells, three pigeon houses, a tool shed, and other buildings. On

the two and one-half acre tract is a $5,000 filling station and the two story "Alameda County Landmark." No evidence either of the value or nature of the property was introduced in the trial court. Plaintiff did not take the stand and did not tender the issue to the trial court that the price paid at the sale was inadequate. It is axiomatic that an appellate court is merely a court of review and that it cannot determine issues which were not offered or heard in the trial court.

Another attack upon the conduct of the sale relates to the posting of the notice of sale. Appellant states that the property consists of two noncontiguous parcels separated by a public highway, and that the notice of sale was posted on but one. This issue does not appear to have been tendered to the trial court and no finding was made in relation to it. It does appear that the deed of trust described the property as consisting of two parcels, but it does not appear that they were noncontiguous. If the separation of a tract of land by a public highway should require the posting of a notice of sale on each, the statute would so specify. (*Crandall* v. *Title Guarantee & Trust Co.*, 2 Cal. App.2d 96 [37 P.2d 519].) From all that appears here the property conveyed consisted of a single holding owned and operated by appellant as a single ranch, no part of which is described in the trust deed "in such a manner as to show or to make it appear probable that it is not a part of one integral tract of land." (*Security-First Nat. Bank of Los Angeles* v. *De LaCuesta*, 15 Cal.App.2d 302, 306 [59 P.2d 542].)

Appellant attacks the form of the judgment which appears in the clerk's transcript. It is conceded that this differs from the original judgment in that it contains a writ of possession. Respondent states outside the record that the original judgment was "lost." Appellant views this explanation with just suspicion and argues that it is evidence of a preconceived conspiracy on the part of all the respondents to deprive her of her property and to defeat her legal remedies. But the record does not support the argument. The clerk's transcript discloses that the findings of fact and conclusions of law were signed and filed on March 8, 1944. On the same day the judgment was entered and filed by the clerk, though not docketed until eight days later. When or how the original judgment was "lost," or

how it differed from the one appealed from does not appear. Respondents are content to rest on the statement that it is immaterial, since the purchaser was entitled to a writ of possession. This cannot be disputed and if the judgment were silent in that respect the purchaser could have applied for such a writ. On the record before us we cannot find that appellant has suffered any injury by the asserted irregularity in the manner of the entry of the judgment.

Appellant contends that she was denied due process by the denial of her demand for a jury trial. The record discloses that on November 9, 1943, appellant filed her written demand for a trial by jury. On December 20, 1943, the cause was set for trial before a jury on January 3, 1944, and written notice was served on appellant on the same day. On the day set for trial the appellant deposited the jury fees and thereupon demanded a trial by jury which was denied. Section 631 of the Code of Civil Procedure provides that a trial by jury is waived by failing to deposit with the clerk ten days prior to the date set for trial, a sum equal to one day's jury fees. Having failed to deposit the necessary sum at the prescribed time, appellant cannot now assert that she was denied a jury trial by any error of the trial court. (*Norland* v. *Gould,* 200 Cal. 706, 708 [254 P. 560]; *Harmon* v. *Hopkins,* 116 Cal.App. 184, 187 [2 P.2d 540].) In holding that the trial court did not err in denying appellant's demand for a jury trial we do not imply that this cause of action is one in which she would be entitled as of right to a trial by jury if the jury fees had been deposited within the time prescribed in the code.

Throughout her briefs appellant suggests that she was injured by respondents' refusal to accept her tender of the amount due made after notice of default. We have been unable to find any evidence that a sufficient tender was made, or that any tender was made within the period of three months following the date of recordation of notice of default, as required by section 2924c of the Civil Code. The issue was not properly raised in the complaint and hence the findings do not cover it. The burden of proof was on appellant to show that she complied with the terms of the code section and this burden she has failed to sustain.

None of the foregoing procedural objections raised by appellant would justify a reversal of the judgment. They are

generally supported by the citation of authorities from other jurisdictions which do not bear analysis under our prevailing statutes. We appreciate the unfortunate position in which appellant finds herself because she did not seek legal advice to protect her legal rights. Whether from lack of knowledge of her legal rights and duties, or from choice, the appellant elected to default in her contractual obligations and then sought relief in a court of equity without, however, offering to do equity on her own part. The rule in this state is settled that a tender of the indebtedness is a prerequisite to a judgment canceling a sale under a deed of trust. (*Leonard* v. *Bank of America,* 16 Cal.App.2d 341 [60 P.2d 325] ; *American Trust Co.* v. *De Albergaria,* 123 Cal.App. 76 [10 P.2d 1016] ; *Shimpones* v. *Stickney,* 219 Cal. 637 [28 P.2d 673].) In the latter case the Supreme Court said (p. 649) : ''It is settled in California that a mortgagor cannot quiet his title against the mortgagee without paying the debt secured. (See a long list of cases sustaining the equitable rule as variously applied collated in 10 Cal.Jur., p. 512 et seq.) It was clearly erroneous to quiet her title under the circumstances of her refusal to do equity.''

Though appellant frequently refers in her briefs (and in letters and other uncertified papers left with the clerk of this court) to her offer to pay the indebtedness, the record does not disclose more than an offer made after judgment to pay in part. Such negotiations as were made after the trial and which are not evidenced by documents duly made a part of the reporter's transcript, or certified by the trial judge or the clerk of court cannot be considered on this appeal.

There is no prejudicial error apparent on the record before us.

The judgment is affirmed.

Goodell, J., and Dooling, J. pro. tem., concurred.

A petition for a rehearing was denied September 19, 1945, and appellant's petition for a hearing by the Supreme Court was denied October 18, 1945.